**NOT FOR PUBLICATION**

```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| THEODORE A. BIANCHI, III, | : CIVIL ACTION NO. 06-1979 (MLC) |
| Plaintiff, | : **MEMORANDUM OPINION** |
| v. | : |
| LAZY DAYS R.V. CENTER, INC., et al., | : |
| Defendant. | : |

**COOPER, District Judge**

Plaintiff, Thomas A. Bianchi, III ("plaintiff"), brought this action against defendant, Freightliner Custom Chassis Corporation ("Freightliner") and Lazy Days R.V. Center, Inc. ("Lazy Days"), alleging various claims including fraud, breach of contract, breach of warranty, and violations of the Uniform Commercial Code ("UCC"), the Magnuson-Moss Warranty Act, and the New Jersey Consumer Fraud Act ("NJCFA"). (Dkt. entry no. 24, Am. Compl. ("Compl.").)[1]  Freightliner moves to dismiss the counts in the amended complaint asserted against it alleging common law fraud and consumer fraud pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Dkt. entry no. 26.)  Plaintiff

---

[1] The parties agreed to a voluntary dismissal of Lazy Days from the action. (Dkt. entry no. 19.)

opposes the motion. (Dkt. entry no. 27).  For the reasons stated herein, the Court will grant the motion.

## BACKGROUND

Plaintiff entered into a written contract to purchase a new 2005 Allegro Phaeton recreational vehicle ("the R.V.") from Lazy Days's Florida facility.  (Compl., at ¶ 6 .)  The R.V. was manufactured by Freightliner and included a "New Vehicle Limited Warranty."  (Id. at ¶ 9.)  The warranty stated that all components and parts were covered "unless specifically covered by other warranties or otherwise excluded by this document."  (Id. at ¶ 23.)  The documentation further specifies that Freightliner is obliged under warranty to "repair or replace, at company's discretion, any defective component or part."  (Id. at ¶ 24.)  There are no exclusions for the odometer, therefore making it within the scope of the warranty coverage.

Three days after taking possession of the R.V. in Florida, plaintiff discovered that the speedometer and odometer had stopped operating.  (Id. at ¶ 10.)  Plaintiff returned to Lazy Days, and he was directed by Lazy Days to drive the vehicle to New Jersey, his home state, to receive the essential repairs.  (Id. at ¶¶ 10-12.)  The necessary equipment to make the repairs was not available at the New Jersey Freightliner facility.  (Id. at ¶ 13.)  Plaintiff then took the vehicle to a Freightliner

facility in Harrisburg ("Harrisburg Freighliner"). (Id. at ¶ 14.) The odometer showed 685 miles at the time plaintiff took possession of the R.V. in Florida, and despite driving it from Florida to New Jersey and then from New Jersey to Harrisburg, the odometer only showed 744 miles when he dropped the R.V. off at the Harrisburg Freighliner. (Id. at ¶ 16.)

Representatives at Harrisburg Freightliner told plaintiff the "odometer reading could be repaired so as to reflect the accurate number of miles for which the vehicle had actually been driven." (Id. at ¶ 16.)[2] Although Harrisburg Freightliner "was able to correct" the odometer and speedometer, it could not "restore or repair" the odometer so as to reflect the accurate mileage driven before the repair. (Id., at ¶ 15.) Freightliner representatives in Harrisburg advised plaintiff the "engine stored the miles and that plaintiff should bring the vehicle to a Caterpillar facility so that the engine could be hooked up to a computer and the accurate mileage revealed." (Id. at ¶ 17.)

---

[2] Plaintiff also alleges that another Freightliner employee based out of a Freightliner facility in Gaffney, South Carolina, Steven Horton, also told him that the odometer could be fixed so as to represent the proper mileage driven. (Id. at ¶ 18.) Plaintiff does not indicate in the amended complaint or his brief, however, when or how he received this advice from Horton. Plaintiff also notes that Horton later told him the mileage not being stored on the engine had to be a result of a "catastrophic failure." (Id. at ¶ 20.)

Plaintiff took the R.V. back to Cruzan's Freightliner, which is also a Caterpillar facility. (Id., at ¶ 19.) The engine was hooked up to a computer, but the correct mileage number could not be determined. (Id.) No further solution to the problem was offered by Freightliner or its representatives. (Id. at ¶¶ 20-22.)

## DISCUSSION

### I. Standard of Review For a 12(b)(6) Motion

The Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A district court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. Doe v. Delie, 257 F.3d 309, 313 (3d Cir. 2001). But a court need not credit a complaint's "bald assertions" or "legal conclusions" when deciding a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997)(citation omitted). "Dismissal of claims under Rule 12(b)(6) is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of [the] claim upon which relief may be granted." Jakomas v. McFalls, 229 F.Supp.2d 412, 419 (W.D. Pa. 2002).

The Court, when considering a motion to dismiss, may generally not "consider matters extraneous to the pleadings." In

re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426. However, if the Court exercises discretion and permits a party to present matters outside the pleadings, the Court must (1) convert the motion to dismiss into one for summary judgment, and (2) allow the parties a reasonable opportunity to present all material pertinent to such a motion under Rule 56. Fed.R.Civ.P 12(b). An exception to this general rule is that the Court may consider (1) exhibits attached to the complaint, (2) matters of public record, and (3) all documents that are integral to or explicitly relied upon in the complaint without converting the motion to dismiss into one for summary judgment. Angstadt v. Midd-West Sch. Dis., 377 F.3d 338, 342 (3d Cir. 2004).

**II.  New Jersey Consumer Fraud Act**

Freightliner argues that plaintiff's claim in the second count insofar as asserted against it under the NJCFA should be dismissed because (1) the NJCFA does not allow a purchaser of goods to bring an action against a manufacturer who was not involved in the sale of the vehicle, (2) even if the present situation involves a consumer transaction, there was no affirmative act of misrepresentation on Freightliner's part, (3) there are no facts alleged in the amended complaint that could be regarded as aggravating factors necessary to qualify as "unconscionable," and (4) plaintiff's claim lacks the specificity

5

required by Rule 9(b) for fraud claims.  (Dkt. entry nos. 26 & 29, Def. Br. at 7-12, Def. Reply Br. at 3-8.)  Plaintiff asserts (1) a manufacturer is liable under the NJCFA, (2) Freightliner's statements pertaining to the odometer were affirmative misrepresentations, (3) a jury could find Freightliner's act of not repairing the odometer mileage unconscionable, and (4) discovery is necessary to uncover more facts supporting the fraud claims.  (Dkt. entry no. 27, Pl. Br., at 4-9.)

**A. Transactions within the meaning of NJCFA**

The NJCFA provides in relevant part:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

N.J.S.A. § 56:8-2.  The NJCFA addresses products "sold to consumers in the popular sense" but is not limited to those parties participating directly in sales. Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co., 226 F.Supp.2d 557, 561 (D.N.J. 2002) (NJCFA's coverage of sales that are attempted either "directly or indirectly" indicates a broad scope of liability).

6

The NJCFA "encompass[es] the acts of remote suppliers, including suppliers of component parts, whose products are passed on to a buyer and whose representations are made to or intended to be conveyed to the buyer." Perth Amboy Iron Works, Inc. v. Am. Home Assur. Co., 543 A.2d 1020, 1026 (N.J. App. Div. 1988)(finding manufacturer of a yacht liable under the NJCFA), aff'd, 571 A.2d 294 (N.J. 1990). The NJCFA language "'subsequent performance of such person as aforesaid' does not require defendant to be an advertiser or seller." Id. at 1025. The character of the transaction is what determines whether the NJCFA is applicable. Bracco Diagnostics, 226 F.Supp.2d at 560.

   The Court finds that Freightliner, as the manufacturer of the R.V. sold through Lazy Days to plaintiff, is subject to liability under the NJCFA. Freightliner argues that the commercial transaction involving the R.V. does not expose it to liability because Freightliner did not directly sell the product or influence the transaction. (Def. Reply Br. at 5-7.) Case law and the statute, however, contradict Freightliner's interpretation of the NJCFA. Neither the yacht nor engine manufacturers in Perth Amboy were directly involved in the sale of the yacht, but were nonetheless liable because a "sale" according to the statute includes indirect attempts to sell. 543 A.2d at 1026. Thus, the "sale" from the engine and yacht

7

manufacturer to the consumer through a retailer created liability under the NJCFA for the manufacturers.  Id.

Freightliner's involvement here is analogous to the manufacturers' involvement in Perth Amboy.  Freightliner indirectly attempted a "sale" within the meaning of the NJCFA when it sold the R.V. it manufactured to Lazy Days, thus making it liable under the NJCFA.  Neither party disputes the R.V. is a good sold "to a consumer in the popular sense." Bracco Diagnostics, 226 F.Supp.2d at 561.  The broad coverage of the NJCFA further supports the Court's conclusion that Freightliner is subject to liability under the NJCFA as the manufacturer of the R.V.

### B. Affirmative Acts

One must commit an "unlawful practice" to violate the NJCFA. N.J.S.A. § 56:8-2.  There are three general categories of unlawful practices under the NJCFA: (1) affirmative acts, (2) knowing omissions, and (3) regulation violations. N.J.S.A. § 56:8-2, § 56:8-4.  When the alleged consumer fraud violation consists of an affirmative act, it is not necessary for the plaintiff to prove that the defendant intended to commit an unlawful act.  Gennari v. Weichert Co. Realtors, 691 A.2d 350, 365 (N.J. 1997).  However, when the alleged consumer fraud consists of an omission, intent is an essential element of the

charge. Id. at 366. An affirmative misrepresentation under the NJCFA is "one which is material to the transaction and which is a statement of fact, found to be false, made to induce the buyer to make the purchase." Mango v. Pierce-Coombs, 851 A.2d 62, 69 (N.J. App. Div. 2004) (cites and quotes omitted).

The Court finds that there are no facts alleged that could be construed as an unlawful practice on the part of Freightliner. Freightliner's statements or promises to the plaintiff that it would repair the odometer and correct the mileage figure are not affirmative misrepresentations under the NJCFA. No promises are alleged to have been made by Freightliner that were material to the sales transaction, nor does plaintiff allege he was induced to make the purchase by some statement related to the odometer function. Plaintiff's allegations of fraud by Freightliner also fail to qualify as omissions under the NJCFA because no facts as to Freightliner's intent to commit an unlawful act are alleged. Therefore, the Court concludes that Freightliner committed no unlawful practice within the terms of the NJCFA.

### C. Substantial Aggravating Factors

Freightliner argues that plaintiff's claim should be dismissed because it lacks allegations of substantial aggravating circumstances that rise to the level of unconscionability. Plaintiff asserts that a jury could find that Freightliner's

failure to repair the odometer with the correct mileage was unconscionable.  The NJCFA requires that "substantial aggravating circumstances" accompany a breach of warranty in order to recover under the NJCFA.  <u>Suber v. Chrysler Corp.</u>, 104 F.3d 578, 587 (3d. Cir. 1997).  In examining an "unconscionable commercial practice," unconscionability is "an amorphous concept obviously designed to establish a broad business ethic."  <u>Kugler v. Romain</u>, 279 A.2d 640 (N.J. 1971).  The standard of conduct that the term "unconscionable" implies is lack of "good faith, honesty in fact and observance of fair dealing."  <u>Id.</u> at 640.  By itself, "a breach of warranty, or any breach of contract, is not per se unfair or unconscionable and a breach of warranty alone does not violate a consumer protection statute."  <u>D'Ercole Sales, Inc. v. Fruehauf Corp.</u>, 501 A.2d 990, 990 (N.J. App. Div. 1985).

    Violations of the New Jersey Lemon Law and fraudulent reporting practices constitute aggravating circumstances.  <u>Suber</u>, 104 F.3d at 587.  In <u>Suber</u>, the plaintiff sued under the NJCFA for problems related to a van manufactured by the defendant.  <u>Id.</u> at 581.  After months of denying the van had problems, defendant's representatives allegedly conceded that suspension problems existed, but wrote contradictory information in the official repair report.  <u>Id.</u>  The plaintiff also alleged that defendant had issued a notice advising of the need to repair the

10

suspension problems in that model and year of van.  Id. Significantly, the defendant also committed violations of the New Jersey Lemon Law that were "per se unlawful within the meaning of the NJCFA."  Id.  The court found that the plaintiff had alleged sufficient aggravating circumstances constituting more than a mere breach of warranty under the NJCFA.  Id. at 587.

There were also aggravating circumstances in addition to a breach of warranty in Naporano Iron & Metal Co. v. American Crane Corp., a case involving a defective clutch on a construction crane.  79 F.Supp.2d 494, 507-08 (D.N.J. 1999).  The plaintiff alleged that after it became clear that the clutch was defective, the original clutch was recalled, and a non-defective crane with a modified clutch was to be provided.  Id. at 497.  However, the modified clutch was also recalled, and the plaintiff was told to resume using the original clutch.  Id.  The defendants next recommended the plaintiff cease use of the crane, which would effectively close down its operations.  The plaintiff also made more specific allegations related to a defective brake and alleged defendants broke their promise to provide the plaintiff with the first available working brake.  The plaintiff further alleged that defendants intentionally and knowingly omitted material information in connection with their products and that the defects in the crane created a hazardous condition.  Id. at

497. The Court found that the plaintiff's allegations constituted substantial aggravating factors necessary to prove a violation of the NJCFA and denied defendants' motion to dismiss for failure to state a claim. Id. at 507-08.

The Court finds that there are no facts alleged here that could be considered substantial aggravating factors. The facts alleged amount to no more than a breach of warranty. At most, plaintiff alleges Freightliner represented it was going to fix something that it was then unable to fix. There were no deceptive practices, false paperwork or safety hazards allegedly undertaken by Freightliner in breaching the warranty in regard to the R.V.'s odometer. Unlike in Suber, where plaintiff alleged facts demonstrating the defendant was aware of the problem at the time it denied the existence of that problem to plaintiff, plaintiff here does not allege any facts demonstrating that Freightliner knowingly misrepresented any material facts concerning the odometer or its ability to repair it. Similarly, unlike the defendants in Naporano, Freightliner did not present false information as to the replacement of the part but rather told plaintiff immediately after working on the R.V. that it would not be able to restore the odometer to reflect the true number of miles driven.

The Court will thus grant the part of the motion to dismiss the second count insofar as asserted against Freightliner because the Court finds that the plaintiff has not stated the essential elements of consumer fraud under the NJCFA.

**III. Common Law Fraud**

Freightliner argues that the common law fraud claim asserted against it should be dismissed for failure to state a claim and for violation of Rule 9(b).  The five elements of common law fraud are: (1) material misrepresentation of presently existing or past fact; (2) knowledge or belief by defendant of its falsity; (3) intention that other person rely on representation; (4) reasonable reliance thereon by other person; and (5) resulting damages.  Gennari, 691 A.2d at 367; Bell Atl. v. P.M. Video Corp., 730 A.2d 406, 417 (N.J. App. Div. 1999).

The Court finds that plaintiff fails to allege any facts demonstrating that Freightliner made a knowingly false statement concerning its ability to repair the odometer.  Thus, the complaint fails to allege any facts showing a (1) material misrepresentation of presently existing or past fact or (2) knowledge or belief by defendant of its falsity.  Gennari, 691 A.2d at 367.  The Court therefore concludes that plaintiff fails to state a prima facie case of common law fraud against Freightliner.

**IV.  Federal Rule of Civil Procedure 9(b)**

Freightliner also argues that the complaint fails to allege sufficient facts in support of the claims for common law fraud and consumer fraud under the NJCFA to satisfy Rule 9(b).  Rule 9(b) requires that all allegations of fraud state the circumstances constituting the fraud "with particularity."  Fed.R.Civ.P. 9(b).  Although the rule is normally rigorous and particular, it has been "relaxed somewhat where the factual information is peculiarly within the defendant's knowledge or control."  In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1418.  However, "even under a relaxed application of Rule 9(b), boilerplate and conclusory allegations will not suffice."  Id.  Plaintiffs must accompany their legal arguments with "factual allegations that make their theoretically viable claim plausible."  Id.

The Court finds that plaintiff has not alleged facts constituting fraud with the particularity necessary to satisfy Rule 9(b).  Plaintiff's fraud allegations are suggested in his brief as merely possible theories of liability, but the complaint alleges no facts supporting those theories.  For example, plaintiff states that discovery may reveal that Freightliner (1) had knowledge of the defective condition and knowingly concealed the condition and (2) knew of the falsity of its representations

that it would repair the odometer. (Pl. Br., at 4-6.) Plaintiff is thus asking the Court to assume several unlawful acts that are not alleged in any complaint. The Court notes it has afforded plaintiff several opportunities to amend the complaint to include sufficient facts comporting with the pleading requirements for fraud, but the amended complaint remains deficient because the alleged facts required to assert a claim of fraud are absent.[3]

## CONCLUSION

The Court will grant the motion to dismiss the first count and second count of the amended complaint insofar as asserted against Freightliner pursuant to Rule 12(b)(6). The facts alleged by plaintiff, even if true, fail to state a claim that Freightliner committed consumer fraud under the NJCFA or common law fraud. The Court will issue an appropriate order and judgment.

                                                s/ Mary L. Cooper
                                       **MARY L. COOPER**
                                       United States District Judge

---

[3] Because the Court finds that plaintiff fails to state facts supporting causes of action for common law fraud or consumer fraud under the NJCFA, Freightliner's economic loss doctrine argument is rendered moot and will not be addressed.